IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ryan Anthony Wright,                      :
                    Petitioner            :
                                          :
          v.                              :
                                          :
Pennsylvania Board of Probation           :
and Parole,                               :     No. 877 C.D. 2015
                    Respondent            :     Submitted: October 9, 2015

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY                         FILED: November 5, 2015

          Ryan Anthony Wright (Wright) petitions for review from a final
determination of the Pennsylvania Board of Probation and Parole (Board) that
established his maximum date as June 18, 2017.[1]


          On June 6, 2008, Wright was effectively sentenced to a term of three
to seven years for robbery. He was concurrently sentenced to a term of three to
seven years for criminal conspiracy.

---

[1]          This Court's review is limited to determining whether the Board's findings are
supported by substantial evidence, are in accordance with the law, and whether constitutional
rights have been violated. Krantz v. Pennsylvania Board of Probation and Parole, 483 A.2d 1044
(Pa. Cmwlth. 1984). This Court will interfere with the Board's exercise of administrative
discretion only where it has been abused or exercised in an arbitrary or capricious manner.
Green v. Pennsylvania Board of Probation and Parole, 664 A.2d 677 (Pa. Cmwlth. 1995).

Wright was released on parole on June 9, 2011. On August 15, 2011, the Board declared Wright delinquent effective August 13, 2011. On May 2, 2012, the Norristown Police Department arrested Wright and charged him as a person not to possess, use, manufacture, control, sell, or transfer firearms. He was also charged with possession of firearms not to be carried without a license. Also, on May 2, 2012, the Board issued a warrant to commit and detain Wright. Wright was confined in the Montgomery County Prison from June 20, 2012, until July 11, 2012, for failure to post bail. On July 11, 2012, Wright was released on his own recognizance on the firearms charges. He remained incarcerated on the Board's warrant. On April 3, 2013, following a bench trial, Wright was convicted as a person not to possess, use, manufacture, control, sell, or transfer firearms and sentenced to a term of five to ten years. The other charge was nolle prossed.

In the interval, on May 12, 2012, Wright was charged with the technical parole violation of condition #1 for failure to report and leaving the district without permission. Wright originally had a revocation hearing scheduled for May 15, 2012. Wright requested a continuance pending the disposition of criminal charges. On July 9, 2012, the Board entered an order to detain Wright pending the disposition of criminal charges. On June 20, 2013, Wright requested a continuance of his hearing so that he could secure private counsel. On July 24, 2014, Wright requested that his panel revocation/violation be continued until September or October 2014, so that he could secure representation.

The Board held a panel violation/revocation hearing on November 20, 2014. Wright waived his right to an attorney. Parole Agent Brian Norvick (Agent

2

Norvick) submitted into evidence the proof of the firearms conviction of April 3, 2013. Wright acknowledged the conviction. Notes of Testimony, November 20, 2014, (N.T.) at 14; Certified Record (C.R.) at 76. With respect to the technical violation, Agent Norvick testified that Wright was arrested on May 2, 2012, in Norristown even though he was not given permission to be outside of the Philadelphia district. N.T. at 16; C.R. at 78. Wright stated that he was not arrested by the Norristown Police Department but by Parole Agent Henry Gabb (Agent Gabb).[2] As a result of that arrest he was subsequently charged with the firearms violations by the Norristown Police Department. N.T. at 17; C.R. at 79.

In a decision recorded November 24, 2014, and mailed December 8, 2014, the Board recommitted Wright to serve twenty-four months backtime as a convicted parole violator and established his maximum date as August 27, 2017. The Board did not recommit Wright on the alleged technical violation. In a decision recorded January 26, 2015, and mailed January 27, 2015, the Board modified the maximum date to June 18, 2017.

On January 12, 2015, Wright requested administrative relief and alleged that he was not credited for 1,125 days that he spent in custody under a Board detainer. By letter dated February 2, 2015, the Board informed Wright that his request for administrative relief was moot and would not be addressed because the Board modified his maximum date to June 18, 2017.

---

[2] In the record Agent Gabb's name is spelled both "Gabb" and "Gaab." This Court will refer to him as Agent Gabb.

3

On February 23, 2015, Wright again requested administrative relief and alleged that he was entitled to 932 days credit for time spent under a Board detainer:

> Wright was under a detainer of the board from May, 02, 2012 until his parole revocation hearing on November 20, 2014, with a total confinement of 932-days in custody.
> . . . .
> 1. On May 02, 2012, Wright was arrested by State Parole Agent Mr. Gaab [Agent Gabb], in Norristown, Pennsylvania. Wright was in possession of a gun and was transferred to Montgomery County Correctional Facility pursuant to a board detainer until he was transferred to SCI-Graterford on May 14, 2012 – 12-days later.
>
> [2.] On June 20, 2012, Wright satisfied bail requirements for the above charge. However, Wright remained incarcerated at SCI-Graterford, due to a boards [sic] detainer. . . .
>
> 3. On November 20, 2014, after several continues [sic] by Wright, a Parole Revocation Hearing was held.
>
> 4. On December 08, 2014, the Board issued a decision and ordered Wright to serve twenty-four (24) months back time and extended Wright's maximum release date until August 27, 2017.
> . . . .
> 5. . . . [T]ime spent in custody under a board detainer shall be credited to a convicted parole violaters [sic] original term. Only when the parolee was eligible for and had satisfied bail requirements for the new detainer lodged against him.
> . . . .
> 6. Wright satisfied the bail requirements for the new offense and remained incarcerated at SCI-Graterford and SCI-Mahanoy due solely on [sic] the detainer lodged against him by the board.

7. On May 02, 2012, up until November 20, 2014, (932-days) had passed and Wright remained incarcerated. Moreover, Wright's new maximum release date should only have been extended (84-days), Making, -- August 28, 2015 his maximum sentence date. (citation omitted).

Request for Administrative Relief, February 23, 2015, Paragraph Nos. 1-7 at 1-2;

C.R. at 105-106.

The Board affirmed the January 27, 2015, decision:

When the Board paroled you on June 9, 2011, your max date was June 6, 2015. This means you had a total of 1458 days remaining on your sentence at the time of parole. In light of your recommitment as a convicted parole violator, the Board was authorized to recalculate your sentence to reflect that you received no credit for the period you were at liberty on parole. . . . This means you still had 1458 days remaining on your sentence based on your recommitment.

On May 2, 2012, the Board lodged its detainer against you. On June 20, 2012, authorities detained you for new criminal charges that were docketed in the Court of Common Pleas of Montgomery County at CP# 5191-2012. You were released on bail effective June 20, 2012, but you remained confined on the Board detainer at that time. On April 3, 2013, you were found guilty of the new criminal charges, and the court sentenced you to a new term of imprisonment to be served in a state correctional institution that same date. The Board voted to recommit you as a convicted parole violator on November 20, 2014.

Based on these facts, the Board gave you 336 days credit for the period you were incarcerated from May 2, 2012 to April 3, 2013 because you were being held solely on the Board detainer during that period. . . . Additionally, the Board gave you 181 days credit for a prior period of confinement where you were incarcerated from August 16, 2011 to February 13, 2012 but not recommitted.

5

Furthermore, the Board did not give you credit on your original sentence for the period you were incarcerated from April 3, 2013 to November 20, 2014 because the Board had not yet recommitted you as a convicted parole violator. The credit for this time frame will be calculated and credited by the Department of Corrections toward your new sentence. Subtracting the credit the Board gave you from the time you had remaining means you still had 941 days remaining on your sentence.

The Prisons and Parole Code provides that convicted parole violators who are paroled from a state correctional institution and then receive another sentence to be served in a state correctional institution must serve the original sentence first. 61 Pa.C.S. §6138(a)(5). However, that provision does not take effect until the parolee is recommitted as a convicted parole violator. Thus, you did not become available to commence service of your original sentence until November 20, 2014 because that is when the Board voted to recommit you as a parole violator. . . . Adding 941 days to that date yields a new maximum sentence date of June 18, 2017. (citation omitted).

Board Decision, May 7, 2015, at 1-2; C.R. at 112-113.

Wright contends that the Board failed to give him credit for all time served solely pursuant to its warrant from May 2, 2012, to November 20, 2014, and incorrectly recomputed his maximum sentence date.

Wright argues that because he was required to serve his backtime first, his custody for return date was determined as the date he was taken into custody. Wright asserts that the court commitment to the state correctional institution was filed April 26, 2013. If 1,011 days, the amount of time Wright claims remained on his sentence, were added to April 26, 2013, his new maximum date would be March 15, 2016.

6

Section 6138 of the Prisons and Parole Code (Code), 61 Pa.C.S. §6138, provides in pertinent part:

(a) **Convicted violators.—**

(1) A parolee under the jurisdiction of the board released from a correctional facility who, during the period of parole … commits a crime punishable by imprisonment, for which the … parolee pleads guilty … at any time thereafter in a court of record, may at the discretion of the board be recommitted as a parole violator.

(2) If the parolee's recommitment is so ordered, the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole.

(2.1) The board may, in its discretion award credit to a parolee recommitted under paragraph (2) for the time spent at liberty on parole, unless any of the following apply:

(i) The crime committed during the period of parole or while delinquent on parole is a crime of violence as defined in 42 Pa.C.S. § 9714(g) (relating to sentences for second and subsequent offenses) or a crime requiring registration under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders).

(ii) The parolee was recommitted under section 6143 (relating to early parole of inmates subject to Federal removal order).
. . . .
(4) The period of time for which the parole violator is required to serve shall be computed from and begin on the date that the parole violator is taken into custody to be returned to the institution as a parole violator.

7

(5) If a new sentence is imposed on the parolee, the service of the balance of the term originally imposed by a Pennsylvania court shall precede the commencement of the new term imposed in the following cases:

(i) If a person is paroled from a State correctional institution and the new sentence imposed on the person is to be served in the State correctional institution….

At first glance, it might appear that Wright makes a bona fide argument as the Code requires that the service of the balance of the original term by a parolee shall precede the beginning of the term on the new sentence if the parolee was paroled from a State Correctional Institution and the new sentence imposed is to be served in a State Correctional Institution.[3]

However, this Court has long held that a convicted parole violator's custody for return date is determined by the date of the revocation of parole. For instance, in Hill v. Pennsylvania Board of Probation and Parole, 683 A.2d 699 (Pa. Cmwlth. 1996), Theodore Hill (Hill), while on parole, was convicted on May 5, 1994, of criminal trespass, criminal mischief, possession of the instruments of a crime, retail theft, and escape. He was sentenced to a term of forty-two to eighty-four months on the escape charge. The next day he was sentenced concurrently to an aggregate term of three years six months to twelve years on the theft related charges. On October 20, 1994, the Board issued a revocation and recalculation order which recommitted Hill to serve twenty-four months backtime as a convicted parole violator and recalculated his maximum date as October 10, 2003. The

---

[3]  Wright does not argue that the Board had the discretion to award him credit for time spent at liberty on parole pursuant to 61 Pa.C.S. §6138(a)(2.1).  Wright does not challenge the Board's decision to recommit him for the remainder of his term and not award credit.

Board later issued a revised decision which stated that the revocation of Hill's parole was recorded on September 19, 1994. Hill, 683 A.2d at 700.

Hill petitioned for administrative relief and asserted that the Board erred when it failed to apply credit to his original sentence for the time he spent in prison from the date of his conviction on the new charges, May 5, 1994, until the revocation of parole on September 19, 1994. The Board denied the petition. Hill petitioned for review with this Court. Hill, 683 A.2d at 700.

With respect to the calculation of the maximum date, this Court determined:

> Hill contends that the date for service of his 24 months backtime on his original sentence should begin to run on May 5, 1994, the day he was convicted for crimes he committed while on parole. Hill claims that the Board erred in calculating the 24 months backtime from September 19, 1994, the date the Board entered its revocation decision. To support his position Hill cites Section 21.1(a) of the Act commonly known as the Parole Act[4] . . . 61 P.S. § 331.21a(a), relating to the commission of crimes during parole. Section 21.1(a) provides in part that '[t]he period of time for which the parole violator is required to serve shall be computed from and begin on the date that he is taken into custody to be returned to the institution as a parole violator.'
>
> This Court, however, in Campbell v. Pennsylvania Board of Probation and Parole . . . 409 A.2d 980 ([Pa. Cmwlth.] 1980), held that where the Board pursuant to Section 21.1(a) recommits a convicted parole violator to serve the

---

4      Act of August 6, 1941, P.L. 861, *as amended*. This section was added by the Act of August 24, 1951, P.L. 1401, *formerly* 61 P.S. §331.21a(a). The Parole Act was repealed by the Act of August 11, 2009, P.L. 147. It was replaced by the Code, 61 Pa.C.S. §§101-6309.

balance of an original sentence before beginning service of a new term, the prisoner's service of backtime on the original sentence must be computed from the date the Board revokes the prisoner's parole. The Court further noted in Campbell that the time served by the prisoner prior to the date parole is revoked must be applied to the new sentence.

This Court concludes that Campbell is controlling in the present case. Accordingly, the Board properly recalculated the beginning date of service of the 24 months backtime on Hill's original sentence to be September 19, 1994, the date his parole was revoked. Hill is entitled to credit on his new sentence for the time he served from May 5, 1994 to September 19, 1994, the period preceding the date of revocation of Hill's parole.

Hill, 683 A.2d at 701-702.

Here, following Hill, Wright could not begin to serve his backtime until the revocation of his parole on November 20, 2014. The time between his sentencing date of April 3, 2013, and November 20, 2014, was correctly credited to the new sentence. The Board did not err when it recalculated Wright's maximum date as June 18, 2017.[5]

Accordingly, this Court affirms.

BERNARD L. McGINLEY, Judge

---

[5] This Court notes that Hill addresses the predecessor statute of the current Code, Section 21.1(a) of the law known as the Parole Act. However, recently this Court applied Hill to the current Code in Wilson v. Pennsylvania Board of Probation and Parole, No. 329 C.D. 2015 (Pa. Cmwlth. Filed August 11, 2015). While Wilson is not a published opinion, an unpublished opinion of this Court may be cited for persuasive value. See Section 414(a) of this Court's Internal Operating Procedures, 210 Pa.Code §69.414(a).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ryan Anthony Wright,                          :
                    Petitioner               :
                                             :
            v.                               :
                                             :
                                             :
Pennsylvania Board of Probation              :
and Parole,                                  :    No. 877 C.D. 2015
                    Respondent               :

# **O R D E R**

AND NOW, this 5th day of November, 2015, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is affirmed.

_____
BERNARD L. McGINLEY, Judge